2

DOC NO
REC'D/FILED

UNITED STATES DISTRICT COURT 2007 MAR 20  PM 4:26
WESTERN DISTRICT OF WISCONSIN

THERESA M. OWENS
CLERK US DIST COURT
WD OF WI

JACQUELINE JOHNSON, on behalf )
of herself and all others similarly )
situated, )
)
                               ) JURY TRIAL DEMANDED
           Plaintiff, )
)
v. )
)
                               ) **07 C 0159 C**
THE PROCTOR & GAMBLE )
COMPANY, MENU FOODS, INC., ) Case No.
MENU FOODS INCOME FUND, THE )
IAMS COMPANY, and JOHN DOES )
1 through 100, )
)
          Defendants. )
)
)

ORIGINAL

## CLASS ACTION COMPLAINT

Plaintiff, Jacqueline Johnson, through her attorneys, Progressive Law Group LLC and

Larry D. Drury Ltd., on behalf of herself and all others similarly situated, complains

against Defendants, upon personal knowledge as to herself, and as to all other matters

upon information and belief based upon, among other things, the investigation made by

her attorneys, as follows:

### INTRODUCTION

1.     This is a consumer class action seeking redress for thousands of consumers who

purchased pet food products made by Defendant, Menu Foods Income Fund, and

marketed and sold by Defendants, The Proctor & Gamble Company, The Iams Company,

and by other unnamed Defendants ("Defendants").

2. Many consumers, like Plaintiff, have pets who have died, or suffered kidney failure or other injury from eating Defendants' pet food.

## PARTIES

3. Plaintiff, Jacqueline Johnson, is a citizen of the State of Wisconsin and resides in the Western District of Wisconsin. Plaintiff purchased Defendants' pet food products, including but not limited to Iams Select Bites with Tuna in Sauce, Iams Select Bites with Salmon in Sauce, Iams Choice Cuts in gravy, and a variety 12-pack of Iams Select Bites from a Madison, which was specifically purchased at a Wisconsin Pick 'N Save grocery store on February 3, 2007; Plaintiff's cat, Gumbi, developed kidney failure and her health has been irreparably altered as a result of eating the Defendants' pet food at issue.

4. Defendants, Menu Foods Income Fund and Menu Foods, Inc. (collectively, the "Menu Foods Defendants"), manufactured the pet food at issue in this action for the other co-Defendants in this action and for a host of other makers, marketers and sellers of pet food including popular brands. Menu Foods Income Fund claims to be the leading North American private-label manufacturer of so-called wet pet food products sold by supermarket retailers, mass merchandisers, pet specialty retailers and other retail and wholesale outlets. In 2006, the Fund produced more than one billion containers.

5. Defendant, The Procter & Gamble Company (hereinafter sometimes referred to as "P&G"), which acquired, and does business as The Iams Company, is an Ohio corporation with its principal place of business in Cincinnati, Ohio, and P&G is therefore a citizen of Ohio.

6. Defendant, The Iams Company ("Iams") is a corporation with its principle place of business in the State of Ohio, is a citizen of that State, and is owned by P&G. P&G,

the Iams Company, and affiliated companies within their control caused their brands of the consumer products at issue, including Eukanuba® and Iams® brand self-styled "premium" pet foods, to be manufactured, and marketed, distributed and sold to consumers including Plaintiff and the Class, in Wisconsin and throughout the United States.[1]

7. The true names and capacities of the Defendants sued in this Complaint as Does 1-100, inclusive, are currently unknown to Plaintiff, who therefore sues such Defendants by such fictitious names. Each of the Defendants designated herein as a Doe Defendant is legally responsible in some manner for unlawful acts referred to in this Complaint. Plaintiff will seek leave of Court to amend this Complaint to reflect the true names and capacities of the Defendants designated herein as Doe Defendants when such identities become known.

## JURISDICTION AND VENUE

8. Plaintiff submits to the jurisdiction of the Court. Defendants, or one or more of them, systematically and continually do business in this District and in the State of Wisconsin. Transactions giving rise, in part, to Plaintiff's action occurred in this District.

9. Plaintiff reasonably believes that millions of units of the pet food products at issue have been purchased by Plaintiff and the Class; the total amount at issue in this case exceeds $5,000,000.

10. This Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1332 (d)(2).

---

[1] The actions attributable to P&G or Iams herein are only with respect to the products purchased by the Class that were distributed, sold, and/or marketed by P&G or Iams.

## STATEMENT OF FACTS

11. Defendant, Menu Foods Income Fund, announced, on March 16, 2007, the recall of "cuts and gravy" style pet food in cans and pouches, which it manufactured between December 3, 2006 and March 6, 2007, at two of its United States facilities, under private-label for a large variety of pet food brands purchased by Plaintiff and the other Plaintiff Class members, including designated Iams and Eukanuba pet food products – herein, the pet food products at issue or products at issue.

12. Defendant, Menu Foods Income Fund has announced that the timing of this production coincides with the introduction of an ingredient from a new supplier. The Menu Foods Defendants have received complaints about the impact on the renal health of the pets consuming the products at issue manufactured during this time period.

13. Defendants, P&G, and Iams, similarly announced a voluntary recall in the United States and Canada on specific 3 oz., 5.5 oz., 6 oz. and 13.2 oz. canned and 3 oz. and 5.3 oz. foil pouch "wet" cat and dog food products, manufactured by Defendant, Menu Foods Inc.'s Emporia, Kansas plant with the code dates of 6339 through 7073 followed by the plant code 4197.

14. Between December 2006 and February 2007, Plaintiff purchased pet food products at issue, including, without limitation, pouches of Iams Select Bites with Tuna in Sauce, Iams Select Bites with Salmon in Sauce, Iams Choice Cuts in gravy, and a variety 12-pack of Iams Select Bites from a Madison, which was specifically purchased at a Wisconsin Pick 'N Save grocery store on February 3, 2007

15. Plaintiff's pet grey tabby cat, Gumbi, on the morning of February 5, 2007, ate one or more of said products that Plaintiff purchased, but Gumbi immediately regurgitated

portions of the product and progressively developed lethargy, weight loss, and loss of appetite. Thereafter, veterinary tests revealed acute renal and kidney failure for Gumbi, caused by eating Defendants' pet food product. Gumbi was "pet-hospitalized" and prescribed intravenous fluids for approximately five days as a result.

16. As a result of harm to her health, Gumbi will have to receive daily subcutaneous fluid-and-drip injections, and will have to undergo medical monitoring tests every few months, for the rest of her life.

17. To date, Plaintiff has incurred "pet hospital" and veterinarian expenses for Gumbi, arising out of her consumption of Defendant's pet food products at issue, approximately in excess of three thousand dollars ($3,000.00).

18. Defendants, P&G and Iams have admitted that cats and dogs in the United States have become sick and developed signs of kidney failure, including loss of appetite, vomiting, and lethargy from consuming its pet foods at issue, and has advised consumers to stop using the affected products immediately and seek assistance of a veterinarian where appropriate.

19. The pet food products at issue are defectively designed and made, and are poisonous or unreasonably dangerous to pets; due to the ingredient composition of said products, the products are not usable for their intended purposes, and when used, cause a significant risk of bodily harm, including severe or fatal bodily harm (such a renal or kidney failure, or death) to the pet.

20. Said defect and inherent dangers existed in the pet food products at issue at the time Plaintiff and the Class purchased said products, though they could not discover same

at the time of purchase, the dangers inhered in the prodcuts at the time the products left the possession of the manufacturer, distributor, marketer and seller of said products.

21. Defendants had a duty to design, manufacture, distribute, market and sell a safe product, and a duty to warn or disclaim any potential dangers which derive from unreasonably dangers posed by the product.

## CLASS ALLEGATIONS

22. Plaintiff brings this class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of herself and all persons and entities who purchased the pet products at issue, defined herein as "cuts and gravy" style pet food in can or pouch, manufactured by Menu Foods Income Fund or Menu Foods, Inc., between December 3, 2006 and March 6, 2007, including products ultimately sold or marketed by P&G, Iams and other pet food brands. Excluded from the Class are the officers and employees of each of the Defendants, Plaintiff's counsel, and any judges or justices presiding over this action.

23. Plaintiff also brings this action on behalf of a Subclass of all persons and entities who purchased pet products at issue caused to be distributed, marketed and/or sold by P&G and/or Iams – herein, the "P&G Subclass."

24. Plaintiff also brings this action on behalf of a Subclass of all persons and entities who purchased pet products at issue caused to be distributed, marketed and/or sold in the State of Wisconsin – the "Wisconsin Subclass."

25. Plaintiff has met the requirements of Rules 23(a), 23(b)(1), 23(b)(2), and 23(b)(3) of the Federal Rules of Civil Procedure.

26. Plaintiff does not know the exact size of the Class and Subclasses, since this information is largely in Defendants' exclusive control. But based on the nature of the trade and commerce involved, Plaintiff believes that the Class and Subclass each numbers at least in the thousands and that the members of each class are geographically dispersed throughout the State of Wisconsin, or alternatively, throughout the U.S. including in Wisconsin. Therefore, joinder of the members of the Class or each Subclass would be impracticable, and class treatment is the superior method for fairly and efficiently adjudicating this controversy.

27. Plaintiff's claims are typical of other Class and Subclass members' claims because all Class and Subclass members were injured through the uniform misconduct described herein.

28. Common legal and factual questions among and within the respective classes exist, such as:

   a. Whether the respective Defendants caused to be manufactured, distributed, marketed, and sold, the pet food products at issue;

   b. Whether the pet food products at issue are unreasonable dangerous, unfit for pet consumption, and/or not as represented by P&G or Iams; and

   c. Whether Defendants' conduct caused injury in fact to Plaintiff and the members of the Plaintiff Class.

29. Plaintiff can and will fairly and adequately represent and protect the respective Plaintiff Class (including Subclass) members' interests, and has no interests that conflict with or are antagonistic to the Plaintiff Class (or Subclass) members' interests. One or more of Plaintiff's attorneys are experienced and competent in class action litigation.

30. Class certification of the respective, alternative classes is appropriate under Rule 23(b)(3) of the Federal Rules of Civil Procedure because a class action is the superior procedural vehicle for the fair and efficient adjudication of the claims asserted given that:

   a. Common questions of law and fact overwhelmingly predominate over any individual questions that may arise among or within the respective classes and, consequently, enormous economies to the court and parties exist in litigating the common issues, for each class, on a class-wide basis instead of on a repetitive individual basis;

   b. Class treatment is required for optimal deterrence against, and compensation for, Defendants' wrongful conduct alleged herein; and

   c. The aggregate volume of the claims of the Plaintiff Class and each Subclass, whether considered in a national class or, alternatively, in a Wisconsin class, coupled with the economies of scale inherent in litigating similar claims on a common basis, will enable this case to be litigated as a class action on a cost-effective basis, especially when compared with repetitive individual litigation, and no unusual difficulties are likely to be encountered in this class action's management in that all legal and factual questions are common to each class.

31. Plaintiff's claims are typical of the other Plaintiff Class and Subclass members' claims because Defendants injured Plaintiff and the respective Class and Subclass members in the same manner.

32. Class certification is appropriate pursuant to Rule 23(b)(1) of the Federal Rules of Civil Procedure because prosecution of separate actions would create a risk of adjudication with respect to individual members of the respective classes, which may, as a practical matter, dispose of other class members' interests who aren't parties to the adjudication or which may substantially impair or impede individual class members' ability to protect their interests. Separate actions prosecuted by individual class members

would also create a risk of inconsistent or varying adjudications, which would establish incompatible standards of conduct for Defendants.

33. Class certification, whether as a national Class, P&G Subclass and Wisconsin Subclass, or alternative as a single Wisconsin Class, is appropriate under Rule 23(b)(2) of the Federal Rules of Civil Procedure because Defendants have acted on grounds generally applicable to the respective Plaintiff Class and Subclass members.

## CAUSES OF ACTION

34. The preceding paragraphs are incorporated into each of the following causes of action as it set forth in full.

### FIRST CAUSE OF ACTION -- UNFAIR TRADE PRACTICE
(Wis. Stats. 100.18)
(P&G Subclass and Wisconsin Subclass Only)

35. Defendants, P&G and Iams, misrepresented, on the packaging of pet food products at issue which they caused to be marketed and sold to Plaintiff and other members of the P&G Subclass, that said products were, indeed, pet food, were suitable for consumption by pets, and in fact were "premium" pet foods.

36. Said representations on the product packaging, prominently marketed to retail store isles, are advertisements, announcements, statements or representations containing assertions, representations or statements of fact which are untrue, deceptive and/or misleading, in violation of Wis. Stat. §100.18 and similar state statutes.

37. In fact, said products are not suitable for consumption by pets, are not properly considered or presented as pet food, are not a "premium" pet food product, are not fit for their intended purpose, are dangerous to the health of the pet and could lead to the pet's

Class Action Complaint                     9

substantial physical injury or death, are really pet food imitations, and contain an ingredient composition that causes the preceding allegations in this paragraph to be true.

38. P&G and Iams each caused the above-mentioned statements and misrepresentations to be featured on the packaging of their products at issue, which Plaintiff and other members of the P&G Subclass viewed at the time of purchase, with the intent to increase the consumption of, the sale of, or to induce the public to purchase, of their Iams and Eukanuba pet products at issue.

39. Absent Defendants' untrue, deceptive, or misleading statements and representations, Plaintiff and the other members of P&G Subclass would have acted differently. For instance, they would not have been induced to purchase, nor would they have purchased, the Iams and Eukanuba pet products at issue.

40. Defendants' above-described statements and misrepresentations about the Iams and Eukanuba pet products at issue have the capacity or tendency to deceive or mislead, and in fact proximately caused damage to Plaintiff and the other members of the P&G Subclass by inducing them to buy a product they otherwise would not have bought.

41. Because of Defendants' untrue, deceptive, or misleading statements and misrepresentations, Plaintiff and the other members of the P&G Subclass have suffered pecuniary loss.

<u>SECOND CAUSE OF ACTION – UNFAIR TRADE PRACTICE</u>
(Wis. Stat. § 100.20(5) & Wis. Admin. Code § ATCP 90.02)
(P&G Subclass and the Wisconsin Subclass only)

42. Unfair business practices are prohibited in Wisconsin. The Wisconsin Department of Agriculture, Trade, and Consumer Protection (DATCP) is authorized to promulgate general orders (rules) forbidding methods of competition in business or trade

practices in business which are determined by the department to be unfair. Wis. Stat. § 100.20(1), (2). Any person suffering pecuniary loss because of a violation by any other person of any rule proscribing unfair trade practices may sue for double damages, costs, and reasonable attorney's fees.

43. Defendants' products are consumer commodities regulated under Wis. Admin. Code §§ ATCP 90.02.

44. The labels for the pet food products at issue, which the Defendants caused to be made, and/or distributed, marketed and/or sold in the State of Wisconsin, to Plaintiff and the Wisconsin Subclass (e.g. labels for the Iams products at issue which Plaintiff purchased at retail) contain a declaration of identity, as defined in Wis. Admin. Code § ATCP 90.02(1), which is false, deceptive, and misleading, or which is an imitation of an accurate declaration, "Pet Food", in violation of Wis. Admin. Code § ATCP 90.02(3). Said "pet food" products are poisonous or harmful, are improperly identified, contain an improper listing of ingredients, and constitute an imitation of the products they purport to be.

45. Because of Defendants' above-described unlawful representations and omissions, Plaintiff and the other members of the Wisconsin Subclass have suffered pecuniary loss.

### THIRD CAUSE OF ACTION – NEGLIGENCE

46. The Menu Foods Defendants designed and manufactured the pet products at issue.

47. Defendants, P&G and Iams, distributed, marketed and sold those pet products at issue that were sold under their brand names, e.g., Iams and Eukanuba.

48. Each of the Defendants breached their respective duties and duties of care, e.g., in designing, manufacturing, distributing and selling pet products at issue that are

reasonably safe for their intended purposes and so as not to injure users of the products, especially when the products are used in the same manner prescribed by the maker, designer, distributor or seller, as well as their respective aforementioned duties (*see* ¶¶ 18-20, *supra.*)

49.  Defendants' respective breaches of the aforementioned duties in the course of making, distributing, marketing and selling the pet products at issue to Plaintiff and the Class caused each of them actual and proximate damage. Plaintiff and the Class, who purchased said pet products at issue, were damaged as a result thereof.

### FOURTH CAUSE OF ACTION – STRICT LIABILITY

50.  Each of the Defendants proximately caused pet products at issue to be placed into the stream of commerce and purchased by Plaintiff and other members of the Class.

51.  The Defendants breached their aforementioned duties to Plaintiff and the Class, ¶¶ 18-20 *supra.* Plaintiff and the Class were damaged as a result.

### FIFTH CAUSE OF ACTION – UNJUST ENRICHMENT

52.  The revenues and profits flowing to each of the Defendants from the sale of the pet products at issue inured to the benefit of the Defendants and each of them.

53.  Alternatively, as a result of the Defendants' deceptive and unfair practices outlined above, Plaintiff and other members of the P&G Subclass and Wisconsin Subclass purchased pet food products at issue, which were less than the product advertised and represented and which were not fit for their ordinary and intended purpose.

54. The untrue, deceptive, and misleading sales and marketing practices described in this Complaint have enriched each of the Defendants at the expense of Plaintiff and the putative Class members.

55. Plaintiff and other members of the Class are entitled to restitution, and disgorgement of each of the Defendants' ill-gotten gains, as a result of the Defendants' unjust enrichment.

### NOTICE PURSUANT TO WIS. STAT. § 402.

Plaintiff, on behalf of himself and all other similarly situated, hereby puts each of the Defendants on notice that it has breached contracts and warranties for the sale of goods, specifically the pet food products at issue, with all purchasers of that product (including Plaintiff and the other Class members), including breaches of express and implied warranty. The facts and circumstances of such breaches are set forth in this Complaint. Plaintiff intends to amend this Complaint to add claims for breach of warranty and breach of contract if these breaches are not timely cured.

### JURY TRIAL DEMAND

Plaintiff demands a trial by jury on all matters so triable.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that this Court enter judgment in the respective Class members' favor and against Defendants, as follows:

A. That this Court determine that this action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, certify the Class, the Wisconsin Subclass, and the P&G Subclass, appoint Plaintiff as representative of the Class and the Subclasses, and appoint Plaintiff's counsel as class counsel of same.

B. That this Court rule that each of the Defendants violated the applicable laws, and are therefore liable under said laws as alleged above;

C. That this Court award appropriate damages, including double damages where appropriate, interest, and injunctive relief to Plaintiff and the Class (including each Subclass);

D. That this Court determine that the Defendants were unjustly enriched and that restitution is appropriate;

E. That this Court require each Defendant to account for all revenues or profits improperly received as a result of the aforementioned conduct, enjoin each Defendant from dispersing said monies, and impose a constructive trust on said monies.

F. That this Court award Plaintiff's counsel reasonable attorneys' fees and costs; and

G. That this Court order any other relief as it deems just and proper.

Dated: March 20, 2007

Respectfully submitted,

JACQUELINE JOHNSON, on behalf of herself and all others similarly situated

By: *Frank Jablonski*
Frank Jablonski, Esq.
State Bar No.: 1000174
Noah Golden-Krasner, Esq.
State Bar No.: 1047054
Progressive Law Group, LLC
354 West Main Street
Madison, WI 53703
Telephone: (608) 258-8511
Facsimile: (608) 442-9494


Larry D. Drury, Esq.
Larry D. Drury Ltd.
205 W. Randolph Street, Suite 1430
Chicago, IL 60606
Telephone:   (312) 346-7950
Facsimile:   (312) 346-5777
*Pro Hac Vice application to be filed*

Ilan J. Chorowsky, Esq.
PROGRESSIVE LAW GROUP, LLC, Of Counsel
1130 North Dearborn Street, Suite 3110
Chicago, IL 60610
Telephone:    (312) 643-5893
Facsimile:    (312) 643-5894
*Pro Hac Vice application to be filed*